IN THE MATTER OF LARRY K. WALLACE.

[No. 1175S342. Filed September 13, 1976.]

*Larry K. Wallace,* Pro se, for respondent.

*Richard H. Grabham,* Executive Secretary, for Indiana Supreme Court Disciplinary Commission.

PER CURIAM—This is a disciplinary proceeding before this Court on a three-count complaint filed by the Indiana Supreme Court Disciplinary Commission against the respondent.

A Hearing Officer was appointed in this cause, the cause was heard, and the Hearing Officer has filed with this Court his findings of fact and conclusions of law, which are now before this Court for consideration. By order of this Court on April 7, 1976, the respondent was suspended from practice of law in this state pending the final determination by this Court of this matter. Neither the respondent nor the Dis-

ciplinary Commission has petitioned this Court to review the findings and conclusions of the Hearing Officer.

Under Count I of the complaint, the respondent is charged with violating Disciplinary Rules 1-102(A) (1), (4), (5), and (6); Disciplinary Rules 9-102(A) and (B) (1), (2), (3), and (4) and the Oath of Attorney for members of the Indiana State Bar.

With respect to the allegations contained in Count I, the Hearing Officer found the following facts:

"Respondent was the attorney of record for Mr. Clay Smith in a divorce proceeding filed in Delaware County Superior Court, Room Two. On June 20, 1974, the court appointed respondent as Commissioner to sell certain realty owned by Clay and Zora Mae Smith, the proceeds of the sale to be applied to pay marital debts. The real estate was sold at public auction on November 2, 1974, and the respondent personally took into his possession over Five Thousand Dollars ($5,000.00) as aftercosts proceeds from the sale. During this time period respondent maintained a trust account with the Industrial Trust and Savings Bank of Muncie, Indiana, but never were the total sale proceeds deposited in said trust account. However, a sufficient portion of the monies were deposited in trust to pay the Smiths' secured indebtedness in the amount of One Thousand Four Hundred Ninety Dollars and forty-five cents ($1,490.44). Respondent admitted that a large portion of the balance of the fiduciary funds were deposited in his personal checking account. From the time of the receipt of the Smith realty sale proceeds until the trust account was closed, its balance never exceeded Four Hundred Six Dollars and sixteen cents.

"On February 12, 1975, the respondent drafted a trust account check payable to Household Finance Corporation, an unsecured creditor, in the amount of Nine Hundred Fifty-eight Dollars and thirty-five cents ($958.35), when he knew that there were insufficient funds to cover the draft. In fact, there was a negative balance at the time the check was drawn. The creditor, Household Finance, presented the check twice for payment but the item was returned both times for lack of sufficient funds. The check remained unpaid when the bank closed the trust account on March 4, 1975, at which time bank records reflected a negative balance of Seven Dollars and twenty-eight cents ($7.28).

"During the period from November 1974 to March, 1975, respondent offers no explanation as to why the unsecured creditors were not paid on a pro rata basis. When ordered to appear before the Delaware Superior Court to account for the fiduciary funds in his possession, respondent failed to appear, and the matter was continued. On April 3, 1975, a hearing was held and the respondent appeared and was ordered to pay the remaining creditors and make a final accounting to the court. A Commissioner's Final Report had not yet been filed as of March 10, 1976. To this date there has been no final accounting made to the court; however, *five months after the court's order,* respondent drafted checks on his personal account, payable to the unsecured creditors, to satisfy their claims on a pro rata percentage of 77.3%. Respondent's only explanation for the delay in accounting is that he was in financial trouble due to personal problems and marital obligations."

The Hearing Officer concluded that the findings under Count I of the complaint established conduct violative of Disciplinary Rules 1-102(A)(1), (4), (5) and (6); 6-101(A)(3); and 9-102(A) and (B)(1), (2), (3) and (4) of the *Code of Professional Responsibility.*

In Count II of the complaint, the respondent is charged with violating Disciplinary Rules 1-102(A)(1), (4) and (6). With respect to the allegations contained in this Count, the Hearing Officer found the following facts:

"On April 12 and 13, 1975, the respondent purchased certain building materials for his own use from Castle Plywood and Paneling, Inc., of Muncie, Indiana. Both purchases were paid by check in the respective amounts of Ninety-four Dollars and ninety-one cents ($94.91) and Forty-four Dollars and sixty-nine cents ($44.69). Both checks were returned to Castle for lack of sufficient funds. Repeated attempts by the store's employees to contact the respondent were unsuccessful and even ignored by the respondent, whereupon Castle filed suit in small claims court for the amount of the items purchased. It was not until *one week prior* to the final hearing in his cause that respondent finally paid Castle the amount owed."

The Hearing Officer concluded that the finding under Count II established conduct violative of Disciplinary Rules 1-102(A)(1), (4) and (6) of the *Code of Professional Responsibility.*

Under Count III of the complaint, the respondent is charged with violating Disciplinary Rules 1-102(A)(1), (4), (5) and (6); 6-101(A)(3); 7-101(A)(1), (2) and (3); and 7-102 (A)(5), (6) and (8). With respect to the allegations contained in Count III, the Hearing Officer found the following facts:

"Sometime in July or August of 1974, the respondent associated with the law firm of Tanner and Williams in Muncie, Indiana. Respondent rented office space, shared secretarial expenses, and worked on certain cases with Williams wherein the fees were split one-half (½).

"Prior to the respondent's sharing office space, Williams had been retained by Mr. William Shoemaker to obtain the adoption of William Duane DeHart by Howard and Teresa Morgan (Shoemaker's daughter and son-in-law). Shoemaker expressed his desire to handle the attorney fees and paid Williams a retainer in the amount of Two Hundred Fifty Dollars ($250.00). The Morgan adoption was turned over to respondent and when he left the offices of Tanner and Williams in April of 1975 he took the Morgan file with him.

"About the same time as he was leaving Tanner and Williams, the respondent informed Shoemaker that he would need an additional One Hundred Twenty-five Dollars ($125.00) in fees in order to proceed on the adoption. Shoemaker promptly paid that amount on April 4, 1975.

"In May of 1975, Shoemaker inquired as to the status of the adoption and was assured that the matter was before Judge Alva Cox of the Delaware Circuit Court awaiting the judge's signature.

"When subsequently contacted by Mr. Shoemaker, respondent informed him that the adoption was final. Respondent met Shoemaker that afternoon at the county courthouse and gave him an adoption decree purportedly signed by Judge Alva Cox, dated April 28, 1975.

"When unable to obtain a birth certificate for their adoptive grandson, the Shoemakers returned to attorney Williams for help. Subsequent investigation through Judge Cox's office revealed that no petition for adoption had ever been filed; Cox's alleged signature on the decree was in fact a forgery.

"With the assistance of Judge Cox, attorney Williams successfully obtained the Morgan adoption in August of 1975."

The Hearing Officer concluded that the findings under Count III of the complaint established conduct violative of the disciplinary rules set out in the complaint.

Having considered the above detailed findings and conclusions by the Hearing Officer, the Court now adopts and accepts such findings and conclusions as its own. Accordingly, the Court now finds that under Count I of the complaint, the respondent violated Disciplinary Rules 1-102(A)(1), (4), (5), and (6); 6-101(A)(3); and 9-102(A) and (B)(1), (2), (3) and (4) of the *Code of Professional Responsibility*. Under Count II, the Court now finds that the respondent violated Disciplinary Rules 1-102(A)(1), (4) and (6) of the *Code of Professional Responsibility*. Lastly, the Court now finds that under Count III of the complaint, the respondent violated Disciplinary Rules 1-102(A)(1), (4), (5) and (6); 6-101 (A)(3); 7-101(A)(1), (2) and (3); and 7-102(A)(5), (6) and (8).

The misconduct found in this case is exceptionally grave and extends to many unprofessional activities which this Court in the strongest terms finds completely inconsistent with the ethical standards established by the Code of Professional Responsibility. The respondent has neglected the interests of his clients, commingled funds, failed to keep proper records and accounts of client's funds, failed to promptly pay-over to a client funds owing to such client, failed to properly and lawfully carry out his contract of employment with his client, prejudiced and damaged the interests of clients, made false statements of fact and law, created false evidence, and knowingly engaged in conduct involving dishonesty and misrepresentation.

The respondent has not only failed to meet the standards established by the Code of Professional Responsibility, but also he has failed to honor the trust placed in him by his clients. The fiduciary relationship is based in large part on this trust and all attorneys are constantly obligated to safeguard and maintain this trust by faithfully and honestly

representing the interests of their clients to the fullest extent possible. The acts of the respondent fall far short of obligations placed on him as an attorney and clearly establish that he is not a fit person to continue the practice of law in this state; the respondent is a discredit to the legal profession.

With the foregoing considerations in mind, by reason of the violations of the Code of Professional Responsibility found under Counts I, II and III of the complaint, it is now ordered that the respondent be and he hereby is disbarred as an attorney in the State of Indiana.

Costs of these disciplinary proceedings are assessed against the respondent.

NOTE.—Reported at 354 N.E.2d 213.